Solomon et al. *v.* G. C. Allen, Jr., Appellant.

Argued November 10, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Harold B. Beitler,* for appellant, cited: Luckett v. Reichard, 248 Pa. 24; Griesmer v. Netter, 273 Pa. 546.

*Robert M. Bernstein,* and with him *Arthur M. Harrison,* for appellee, cited: Jimmo v. Frick, 255 Pa. 353.

OPINION BY GAWTHROP, J., December 11, 1931:

These appeals by defendant are from judgments entered on verdicts rendered against him in actions for personal injuries sustained by two of the plaintiffs in a collision between the automobile in which they were riding and defendant's automobile. The cases were tried together, were argued together in this court, and may be disposed of in a single opinion. The only issue raised by counsel for defendant at the trial and before us is whether there was any evidence which warranted a finding by the jury that the relation of master and servant existed between defendant and the person in charge of his car at the time of the accident.

Defendant owned the automobile which was being operated by one Paige at the time of the accident. He was a member of the Automobile Club of Philadelphia, hereinafter called club, which operated a garage at 23

South 23rd Street, Philadelphia. For some time prior to September 12, 1928, the night of the accident, he had been using the club's service for "short parking." He paid the regular charge of 35 cents for the storage and an additional regular charge of 25 cents for furnishing him with a man whose duty it was to accompany him to his destination and then return the car to the garage. The superintendent of the garage, called as a witness by plaintiffs, in describing the terms upon which service was rendered to defendant and all other members of the club, stated: "If you came there to go down to the theatre, or something of that kind, there was a charge made of 35 cents, and also a charge made if the car was brought back and forth from the city. . . . . . On a delivery or bringing in of a car, if the member of the club wanted to stop and pick a man up to bring the car back from town there would be a charge of 25 cents made for that, and also if the car was returned, was brought down again another charge of 25 cents in addition to the storage. . . . . . Q. In other words, the man was furnished by the Automobile Club? A. Right. . . . . . Q. Prior to September 12, 1928, had Mr. Allen at any time had occasion to use any of the men employed by the Automobile Club? A. Yes, he had. Q. Tell us what, under what circumstances? A. Well, either delivery or bringing in of his car, he would take the man down to the center of the city and the man brought the car back. Q. When that was done, did Mr. Allen pay the man directly or did he pay the garage? A. A bill was sent out at the end of the month, his monthly bill, and that charge was made on that bill." It appeared further that a member of the club had a right to keep the chauffeur out as long as he wished on the basis of a charge of 75 cents per hour. There was no evidence that defendant ever used this kind of service. On the evening of the accident defendant drove his car to the garage

of the club and requested the night foreman to furnish him with a man to take him to the theatre. Paige, one of the regular employees of the club, was selected by the foreman to accompany defendant. Paige got into the car and defendant drove it to the Walnut Street Theatre and then turned it over to Paige with the direction "to have the car there after the curtain." Paige stored the car in the garage and was driving it back to the theatre when the accident happened.

Defendant offered no testimony and submitted a point for binding instructions, which the court below declined. The only errors assigned are the refusal of defendant's point and the dismissal of his motion non obstante veredicto.

We think that the evidence did not warrant a finding that Paige was defendant's servant at the time plaintiffs were injured. The club agreed, for stipulated charges, not only to store defendant's car but also to furnish an employee to run it to the garage from the place at which defendant delivered it to its employee and to redeliver it to defendant at the place he requested delivery to be made. Under this arrangement the car was entirely under the control of the garage operator from the time it was delivered to the employee to be driven back to the garage until it was redelivered to defendant. While the employee was driving the car back and forth, in the absence of the owner, he was not the servant of the owner but of the club which employed him and paid him for his services. He was under the control of the latter and was subject to its orders and directions, and during that time the car was as much in the custody of the club as when it was stored in the garage. While the employee was taking the car from the garage to the theatre he was acting in furtherance of the business of his employer who was responsible for his acts. The principle controlling the case is well settled by many authorities,

among which are Luckett v. Reighard, 248 Pa. 24, and Griesmer v. Netter, 273 Pa. 546, which, in our opinion, rule this case. In both of those cases the arrangement was that the proprietor of the garage was not only to store the car but also to call for and deliver it to the owner's residence. In each case the accident happened while the employee of the proprietor of the garage was taking the car from the owner's residence to the garage. It was held that the driver of the car was not in the employ of the owner, but of the owner of the garage, while it was being driven to the garage. The present case is not distinguishable from those cases on the ground that in both of them there was a definite agreement providing for the storage of the car and the driving of it back and forth between the owner's home and the garage at a monthly rate. Here, as there, the taking of the car back and forth was a part of the service contracted to be rendered by the operator of the garage. The difference in the form of the contract makes no difference. The master is the person in whose business an agent is engaged at the time, and who has the right to control and direct his conduct. Jimmo v. Frick, 255 Pa. 353, relied upon by counsel for appellee as ruling this case in his favor is radically different from it in its controlling facts. There the proprietor of the garage at which defendant stored his car furnished the owner with a driver at 75 cents an hour; the driver was acting as chauffeur for defendant, who was in the car and had the right to direct and control the driver's conduct, when the accident happened; and the garage proprietor had no authority to operate the car and did not do so. It was held that while the driver was in the general employment and pay of the garage proprietor, he was, at the time of the accident, the servant of the defendant on whose business he was driving the car and

under whose direct control he was acting. Some stress was laid by counsel for appellee on the fact that under the arrangement between defendant and the club defendant could hire a chauffeur from the club at 75 cents per hour, and that when the chauffeur was acting in that capacity he was subject to the orders of the owner of the car. We deem it sufficient answer to this argument to state that Paige was not acting in any such capacity when the accident happened. In fact, as stated above, there is no evidence that defendant ever used one of the club's employees in that kind of service. Plaintiffs' attempt to prove that Paige was defendant's agent at the time of the accident failed. Our conclusion is that defendant's points for binding instructions or his motions for judgment non obstante veredicto should have been granted.

In each appeal, No. 59, October Term, 1931, and No. 60, October Term, 1931, the judgment is reversed, and here entered for defendant.