determined on plaintiff-appellee's application for rehearing. A very exhaustive and comprehensive brief accompanies the application.

The accompanying brief very persuasively urges the incorrectness of our conclusions as presented in the original opinion.

We find no propositions presented not previously considered by us.

We adhere to our original opinion.

The application for rehearing will be denied.

BARNES, PJ, and GEIGER, J, concur.

## EMPIRE WINDOW CLEANING CO v TAYLOR

Municipal Court of Cleveland

Decided Jan 11, 1939

Martin N. Goulder, Cleveland, for plaintiff.

Keenan & Butler, Cleveland, for defendant.

### OPINION

By DRUCKER, J.

The defendant, Herbert A. Taylor stored his automobile at the Moreland Courts Garage at a rental of $15.00 per month and availed himself of the services of the garage that furnished drivers for the car upon request, for which additional charges of $.75 per hour were made by the garage.

On the day in question the defendant was driven to his office by one of the employees sent by the garage. These employees not only acted as drivers but did other work at the garage. After bringing the owner to his office the driver in returning the car to the garage collided with the plaintiff causing damages as alleged.

Under these circumstances the defendant's liability exists, if at all, only if the driver at the time of the accident was acting as the defendant's employee so that a master-servant relationship existed upon which the doctrine of **respondeat superior** may be predicated. The mere fact that the defendant was the owner of the car is not in and of itself a basis for the liability for the injury.

Was the driver, the employee of the garage or of the defendant, Herbert A. Taylor, at the time of the accident? We have recognized the rule that when a person engages both an automobile and a driver from the other the hirer does not thereby become the special employer of the driver nor does he exercise control of the driver by virtue of which the hirer may also have the right to discharge the driver or have some authority as to his employment.

In Gechei v Baltz, 13 Oh Ap 180 (1920) a liveryman was engaged in the business of supplying cars and drivers for weddings and funerals, and supplied four such vehicles to an undertaker who directed the drivers where to go and to take the passengers back to their homes. While returning a passenger to his home, one of the drivers struck the plaintiff causing the injury complained of. The court held:

"While under the circumstances the general servant of the one master may become the special servant of another to such an extent to relieve the former from liability for the servant's negligence, under the facts of this case the general servant remained the servant of the liveryman throughout the transaction, and the servant was engaged upon the business of the liveryman."

A similar situation was present in **Babbit v Say, 120 Oh St 177** (1929) and the court there held that the great weight of authority sustains the liability of the owner where the hirer has not exclusive control of the driver. See also the extensive annotation in 42 A.L.R. 1416; American Jurisprudence Vol. 5, p. 723. In Huddy on Automobiles (9th Ed.) Vol. 7-8, p. 305 it is stated:

"When an automobile is hired and a chauffeur is also furnished by the owner in whose employ he is and by whom he is paid, and the hirer has no authority over him except to direct where he wishes to go the chauffeur is considered the servant of

the owner, and the owner, not the hirer, is responsible for his acts of negligence."

We proceed on the well-established principle that where both the car and the driver are hired as a unit, in most cases, the hirer does not become the master of the driver, nor become liable for injuries resulting from the driver's negligence, but when, as in the present case, only a driver is hired, it is conceded that if the injury resulted from defective machinery it is quite likely that a different rule would apply, but where the injury is the result of the negligence of the driver, regardless of who owns the car the hirer nominally has no more control over the driver in the situation where the unit is hired than where merely a driver is hired. In either event the hirer merely directs the route, and such direction does not amount to such control as would give rise to a master-servant relationship.

The Standard Oil Co. v Anderson, 212 U. S. 215; 29 S. Ct. 252 (1919); Gechei v Baltz, 13 Oh Ap 180.

Of course it is conceivable that the hirer might be held liable where it appears that at the time of the injury he had actually assumed control of the driver's conduct and that the accident was caused by the specific directions of the hirer to the driver. Under such circumstances, it could reasonably be concluded that the driver was the servant of the garage owner in some respects and at the same time, servant of the hirer in other respects, and the liability, in such case would be upon that master whose exercise of the authority caused the accident. However, in the present case, the driver at the time of the accident was clearly acting for only one employer, and to construct an additional master-servant relationship between the driver and the hirer, who was not even present in the car, would be unwarranted by the facts herein presented.

When both the car and the driver are hired, it is obvious that the driver remains in the employment of the owner of the unit because in operating the machine he is carrying on the business of the owner which is to provide transportation to his customers. The court believes that this is a factor in determining the existence of a master-servant relationship, i.e. was the performance of the employee in furtherance of the business of the owner? We are aided in our determination of this question by the answer to the problem of who controls the servant. The servant ordinarily furthers the business of the one under whose authorization he acts.

In the present situation the driver was at all times acting in furtherance of the business of the garage even when the owner was in the car. If it is true that the driver was hired by the garage to operate cars for its customers it would be straining the point somewhat to conclude that while driving such cars, the driver ceased to be in the employ of the garage.

In Ouelette v Superior Motor & Machine Works, 157 Wis. 531, 147 NW 1014 (1914) it was held that where the defendant stored his car at a garage which agreed to furnish a driver when requested, the driver remained the servant of the garage at all times, and the owner was not liable for injuries caused by the driver even though the hirer was in the car at the time of the accident.

In Dalrymple v Covey Motor Car Co., 66 Ore. 533, 135 Pac. 91 (1913) the owner was being driven by an employee of a garage who was instructing the owner concerning the operation of the car which was just recently purchased from the garage. It was held that the garage was the master because the employee was engaged in the performance of a service for the garage.

In Kellogg v Church Charity Foundation, 213 N. Y. 191 (1911) the defendant kept his ambulance at a livery stable which furnished a horse and a driver on request. An accident occurred while the driver was engaged in driving the defendant's ambulance, and it was held that the servant was at all times the employee of the livery stable, and not of the hirer.

But the present case is even stronger than those above cited for application of the principle that the general employer was in control, because here the accident occurred while the driver was returning the automobile to the garage. Since the automobile was kept at the garage, then the driver, in returning the car, undoubtedly was acting on behalf of the garage in fulfilling its bailment contract. It would be the same situation if the defendant had called the garage and asked them to send a driver down to the office to pick up his car and return it to the garage. This was the case in Solomon v Allen, 103 P. A., super 373, 157 A. 363, wherein the defendant took advantage of the "short parking service" of an Automobile Club whereby the latter would furnish a man to accompany the customer to his destination, and then return the car to the garage. It was held:

"Under this arrangement the car was entirely under the control of the garage op-

erator from the time it was delivered to the employee to be driven back to the garage until it was redelivered to the defendant. While the employee was driving the car back and forth in the absence of the owner, he was not the servant of the owner, but of the club which employed him and paid him for his services."

The driver in this case was paid by the garage for his service as a driver and other service performed by him as an attendant at the garage.

The court is of the opinion, therefore, that at the time of the injury the driver was not the servant of the owner of the car, but was acting directly in pursuance of his employment by the garage owner, under the control of the garage owner and for the chief benefit of the garage owner. The hirer cannot be said to have been in control of the driver when the injury occurred, and can not be held liable for the negligence of the driver.

Finding for the defendant.